```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

UNITED NATIONAL INSURANCE       :
COMPANY,
        Plaintiff            :

        vs.                  :   CIVIL NO. 1:CV-07-2092

                             :
ST. PAUL REINSURANCE COMPANY,
CENTENNIAL INSURANCE COMPANY,   :
        Defendant

*M E M O R A N D U M*

*I.    Introduction*

        We are considering motions for judgment on the pleadings filed by Defendants, St. Paul Reinsurance Company and Centennial Insurance Company (doc. 16 and 30, respectively). Plaintiff, United National Insurance Company, filed this declaratory judgment action concerning the obligation of St. Paul and Centennial to defend their insured, Clouse Trucking, Inc. Clouse was a defendant in an action filed by Land O'Lakes, Inc. ("LOL") and Dairy Marketing Services, LLC ("DMS") in the Court of Common Pleas of Cumberland County, Pennsylvania ("original action"). United National undertook Clouse's defense and later settled the matter. St. Paul and Centennial, however, declined to defend Clouse in the original action. St. Paul's and Centennial's motions seek a declaration that, as a matter of law, they had neither a duty to defend Clouse nor an obligation to contribute or indemnify United National. We will grant the

motions for judgment on the pleadings and enter a declaratory judgment in favor of Defendants.

*II.   Background*

The original action alleged that Clouse delivered a load of raw milk, that had been previously rejected due to the presence of antibiotics, to LOL's Mt. Holly Springs facility. Complaint ¶ 4.  Upon delivery, the contaminated milk was pumped into a silo containing uncontaminated milk.  *Id.*  Consequently, LOL was forced to dispose of 484,360 pounds of milk.  *Id.*

LOL and DMS filed an amended complaint alleging seven counts against Clouse Trucking, namely:

>       Count VI – fraudulent misrepresentation
>       Count VII – vicarious liability
>       Count VIII – negligent misrepresentation
>       Count IX – vicarious liability
>       Count X – negligence
>       Count XI – breach of contract implied in fact or in law
>       Count XII – negligence.

Complaint ¶ 9.  United National undertook the defense of Clouse pursuant to a reservation of rights.  Complaint ¶ 13.  Defendants denied coverage under their policies.  Complaint ¶14.

In August of 2006, a mediation was held and a settlement was reached of $85,000.  United National for Clouse agreed to pay $47,500, while the remaining settlment amount was to be paid by others.  Complaint ¶ 15.  Plaintiff also incurred attorney and litigation expenses of $73,333.91.  Complaint ¶ 17.

Plaintiff filed a three count complaint in the Court of Common Pleas of Cumberland County. Count I sought contribution from St. Paul. Count II sought indemnification and Count III alleged St. Paul was unjustly enriched. United National sought damages of $120,833.91. Counts IV, V and VI raised the same claims against Centennial. Complaint ¶¶ 29-38.

United National filed its complaint for declaratory judgment in state court; however, St. Paul removed the case to this Court. (doc. 1). We have subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), and we may consider an action seeking a declaratory judgment under 28 U.S.C. § 2201.

*III. Discussion*

As indicated, United National's complaint sets forth claims for contribution, indemnity, and unjust enrichment based on St. Paul's and Centennial's refusals to defend Clouse in the original action. Upon review of the terms of St. Paul's policy, we find St. Paul had no duty to defend Clouse because the events were not an "occurrence" as defined by the insurance policy. Also, upon review of the terms of Centennial's policy, we find Centennial had no duty to defend based on the policy exclusions and limits of coverage.

*A. Standard of Review*

The Defendants have filed motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

Rule 12(c) provides: "After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." In such a motion, the moving party must show that "there are no material issues of fact, and that he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005). We view the facts and any inferences to be drawn from the facts in the light most favorable to the nonmoving party. *Id.*

   *B.   Duty to Defend*

   We first consider whether Clouse's allegations triggered St. Paul's duty to defend under the terms of its insurance policy. "The duty to defend is different from and greater than the duty to indemnify." *Biborosch v. Transamerica Ins. Co., Inc.*, 603 A.2d 1050, 1052 (Pa. 1992). The insurer has a duty to defend if the complaint's factual allegations state a claim which could potentially be covered under the policy. *Id.* Our analysis focuses on the terms of the insurance policy and the allegations in the complaint. *Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co.*, 704 A.2d 665, 669 (Pa. Super. 1997). We are to take the factual allegations of the complaint as true and liberally construe the complaint, resolving doubts in favor of the insured. *Unionamerica Ins. Co., Ltd. v. J.B. Johnson*, 806 A.2d 431, 433–34 (Pa. Super. 2002) (citing *Cadwallader v. New Amsterdam Cas. Co.*, 152 A.2d 484 (Pa. 1959)). We note, however, the importance of the factual allegations, not merely the causes

of action set forth in the complaint. *See Mutual Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999) ("The particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered."); *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985) ("The obligation to defend is determined solely by the allegations of the complaint in the action."). Here, the insurance policy is a Commercial General Insurance Policy that St. Paul issued to Clouse, and the relevant allegations are found in the original action filed by LOL and DMS against Clouse and other defendants ("the Original Complaint").

> The policy provided, in relevant part:
>
> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage to which this insurance does not apply.

(doc. 16, ¶ 23). With respect to its applicability, the policy provided:

> This insurance applies to 'bodily injury' and 'property damage' only if:
>
> (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and
> (2) The 'bodily injury' or 'property damage' occurs during the policy period;

*Id*. The policy defined "occurrence" as follows: "'Occurrence' means an accident, including continuous or repeated exposure to

5

substantially the same general harmful conditions." *Id*. ¶ 24. While the policy did not define "accident," the Pennsylvania Supreme Court has explained that "the term 'accident' within insurance policies refers to an unexpected and undesirable event occurring unintentionally, and that the key term in the definition of the accident is 'unexpected' which implies a degree of fortuity." *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 292 (Pa. 2007).

In considering the relationship between the allegations and the terms of the policy, we also consider "whether the injuries that are the impetus of the action were caused by an 'accident' so as to constitute an occurrence under the policy." *Id*. Put another way, our inquiry is "whether the conduct causing the harm was alleged to be intentional or negligent." *Commerce & Indus. Ins. Co. v. Snow Envtl. Serv., Inc.*, No. 95-2241, 1996 WL 750018, at *7 (E.D. Pa. Dec. 30, 1996).

As already noted, LOL set forth the following claims against Clouse: (1) Fraudulent Misrepresentation, (2) Negligent Misrepresentation, (3) Negligence and (4) two claims of Vicarious Liability. (doc. 16, pp. 14-20). DMS set forth claims for Breach of Contract Implied in Fact or in Law, and Negligence. *Id*. at 20-22. Each vicarious liability claim is based on the allegations supporting the fraudulent and negligent misrepresentation claims. Amended Complaint, ¶¶ 97, 98, 112, 113.

### 1. LOL's Claims Against Clouse

St. Paul argues that it had no duty to defend Clouse in the Underlying Suit because the factual allegations supporting LOL's claims "set forth merely breach of contract and fraud claims, with no basis for a claim in negligence." (doc. 16, p. 18). United National contends that coverage is not precluded simply because it alleged alternate theories of liability. (doc. 25, p. 9). That is, in addition to allegations of intentional conduct, United National's complaint contained allegations of negligent conduct and negligent misrepresentation falling under the "occurrence" language in St. Paul's policy. *Id*. As a result, according to United National, at least some of the allegations came within the area of coverage, triggering St. Paul's duty to defend. *See Agora Syndicate, Inc. v. Levin*, 977 F. Supp. 713, 715 (E.D. Pa. 1997) (insurer has duty to defend "if any of the allegations in the complaint may potentially fall within the area of coverage").

Taking the allegations of the original complaint as true, we find that the allegations sound in intentional conduct by Clouse. LOL's injury was the destruction of milk resulting from the mixing of the condemned milk delivered by Clouse with other milk in LOL's storage silo. Original Complaint ¶ 54. A review of the allegations leading to LOL's injury shows a series of intentional acts by Clouse in delivering condemned milk when it knew it was not fit for human consumption. According to LOL,

Clouse was familiar with state requirements for the testing of milk, particularly with respect to the presence of antibiotics. *Id*. ¶ 16.  When the milk involved here was first delivered to the Lehigh Valley Dairy ("LVD") processing plant, LVD officials informed Clouse that the milk was condemned due to the presence of such antibiotics and had to be dumped.  *Id*. ¶ 26.  LVD officials placed metal seals on the compartments containing the condemned milk, *id.* ¶ 24, placed a tag on the delivery truck indicating the milk's status, *id*. ¶ 25, noted its rejection on the delivery receipt, *id*. ¶ 27, and forwarded results of the milk tests to state officials, *id*. ¶ 29.

Clouse's alleged actions in the face of LVD's rejection of the milk reveal the intentional nature of Clouse's conduct. According to LOL, Clouse, despite its familiarity with state requirements concerning the handling of condemned milk, *id*. ¶ 16, engaged in the following activity in an attempt to resell the milk to LOL: it created a new delivery receipt omitting LVD's rejection of the milk, *id*. ¶ 36; it forged the signature of the driver who delivered the milk to LVD, *id.*; it removed the seal placed by LVD on the delivery truck, *id*. ¶ 38; it removed the antibiotics tag placed on the truck by LVD, *id.*; it delivered false samples of raw milk to LOL, *id*. ¶ 41; it directed its driver to deliver the condemned milk to LOL and present the forged receipt, *id*. ¶ 43; and it represented to LOL that there was no reason not to accept the milk, *id*. ¶ 47.

8

These allegations, particularly the false representations concerning the quality of the milk, formed the basis for LOL's fraudulent misrepresentation claim in the original action.  *See* Original Complaint, ¶¶ 87-95.  St. Paul had no duty to defend based on this cause of action because fraudulent misrepresentation, as defined in Pennsylvania, requires intent to mislead.  *See Bouriez v. Carnegie Mellon Univ.*, No. 02-2104, 2007 WL 2492735, at *5 (W.D. Pa. Aug. 30, 2007).  The fraudulent misrepresentation claim alleged that Clouse made representations "with the intent of misleading LOL into relying upon such representations so that it would accept the raw milk."  Original Complaint, ¶ 91.  An intentional act is not a covered "occurrence" under a liability policy because it is not an accident.  *See Davis v. Maryland Ins. Co.*, 38 F. Supp. 2d 387, 392-93 (E.D. Pa. 1999) (finding insurer had no duty to defend a fraudulent misrepresentation claim because it was not an accident).  The policy St. Paul issued to Clouse defined "occurrence" as an "accident", therefore, St. Paul had no duty to defend Clouse, based on LOL's misrepresentation claim.  Additionally, since one of the vicarious liability claims was based entirely on the fraudulent misrepresentation allegations, St. Paul had no duty to defend this cause of action as well.  *See Selective Ins. Co. v. Bean Funeral Homes & Crematory, Inc.*, No. 06-03828, 2008 WL 879840, at *4 (E.D. Pa. Mar. 31, 2008) (finding

no duty to defend vicarious liability claim based on underlying claim for which there was no duty to defend).

We also find that St. Paul had no duty to defend Clouse on the negligent misrepresentation and negligence claims. This conclusion is based on our evaluation of the factual allegations supporting these claims. The negligent misrepresentation claim alleged, in relevant part:

> 104. The Defendants owed a duty to LOL to supply milk not prohibited from use in products for human consumption.
>
> 105. The Defendants breached the duty by supplying raw milk to LOL when they had actual knowledge, or had reason to know, that such raw milk was prohibited from use in products for human consumption.
>
> 106. The representations of the Defendants as aforementioned were made with the intent that LOL would rely upon such representations.
>
> 107. The Defendants failed to exercise reasonable care or competence in communicating to LOL the fitness of the raw milk for human consumption.
>
> 108. LOL did justifiably rely upon the representations of the Defendants to its detriment.
>
> 109. The negligent misrepresentations made by the Defendants were the proximate cause of the damages suffered by LOL.
>
> 110. As a result of the negligent misrepresentations of the Defendants, LOL was caused to suffer damages in the amount of $100,898.

Original Complaint, ¶¶ 103-110. The allegations in the negligence claim provided:

10

> 119.   Clouse Trucking and Cloverland knew that the Condemned Milk within the Clouse Trucking truck could not be used for dairy products for human consumption.
>
> 120.   Clouse Trucking and Cloverland knew that LOL intended to use raw milk delivered by them to LOL for dairy products for human consumption.
>
> 121.   Clouse Trucking and Cloverland had a duty not to cause to be delivered to LOL raw milk that could not be used for human consumption.
>
> 122.   Clouse Trucking and Cloverland had a duty to notify LOL that the Condemned Milk could not be used in dairy products for human consumption.
>
> 123.   Clouse Trucking and Cloverland breached the aforesaid duties when they delivered to LOL the Condemned Milk that was not suitable to be used in dairy products for human consumption.
>
> 124.   Clouse Trucking and Cloverland breached the aforesaid duty when they failed to notify LOL that the Condemned Milk could not be used in dairy products for human consumption.

LOL's general allegations that Clouse was merely negligent by misrepresenting the quality of the milk or by delivering unfit milk are belied, however, by the complaint's specific allegations which were incorporated by reference into each claim. *See id*. ¶¶ 103.  LOL alleged that its personnel "specifically asked Clouse if there was any reason not to take the milk, and he responded that there was not," *id*. ¶ 47, despite Clouse's instructions to its driver to deliver the condemned milk and to present the forged receipt, *id*. ¶ 44.  LOL also alleged that Clouse knew that the condemned milk did not meet state safety requirements, *id*. ¶¶

22-28, and that such milk was not fit for human consumption, *id*. ¶ 43. The specific allegations concerning the steps Clouse took to conceal the nature of the condemned milk, *see id*. ¶¶ 36-47, also show Clouse's awareness that the milk was not suitable for human consumption.

These allegations, which indicate intentional conduct, are not saved by designating them as negligence claims. *See Agora Syndicate, Inc. v. Levin*, 977 F. Supp. 713, 715-16 (E.D. Pa. 1997) (explaining: "[I]f the factual allegations of the complaint sound in intentional tort, arbitrary use of the word 'negligence' will not trigger an insurer's duty to defend."). As discussed, the nature of these factual allegations, not the label of the cause of action, controls St. Paul's duty to defend. *See supra*, at 3. The allegations regarding Clouse's conduct do not support a conclusion LOL's injury was the type of "unexpected and undesirable event occurring unintentionally" which would constitute an accident. *See Donegal*, 938 A.2d at 292. Indeed, Clouse was allegedly well aware that the condemned milk could not be used for human consumption. *See* Original Complaint, ¶ 43. Lacking allegations that LOL's injury was caused by anything other than intentional conduct, we cannot conclude that there was an "accident." Consequently, St. Paul's had no duty to defend

based on the negligent misrepresentation and negligence claims contained in the Original complaint.[1]

### 2. DMS's Claims

The original complaint contained two claims by DMS against Clouse. DMS, a company that marketed milk from producers in Pennsylvania, used Clouse to pick up raw milk from producers and deliver it to dairy plants. Original Complaint, ¶ 10. The implied breach of contract claim alleges that Clouse had an implied agreement with DMS to deliver milk and that delivery of DMS's milk in the same sanitary condition as when received was one of the implied terms of the agreement. *Id*. ¶¶ 128-29. Clouse allegedly breached this agreement by commingling the DMS milk and the condemned milk, resulting in the contamination of the DMS milk. *Id*. ¶ 130-31. These allegations also form the basis for DMS's negligence claim against Clouse. *See id*. ¶¶ 133-38.

As with LOL's claims, we find that DMS's implied breach of contract and negligence claims did not trigger St. Paul's duty to defend. St. Paul argues that DMS's breach of implied contract claim fell within the policy's contractual liability exclusion. *See* doc. 16, p. 22. According to St. Paul, when the underlying facts reveal a breach of contract claim, a contractual liability

---

[1] Based on this rationale, St. Paul had no duty to defend based on the vicarious liability claim that was linked to the negligent misrepresentation claim.

exclusion clause in the policy precludes coverage, even when alternative tort theories are presented. *Id.* (citing *Snyder's Hearing Co. v. Pa. Manuf. Assoc. Ins. Co.*, 715 A.2d 483 (Pa. Super. 1998)). United National attempts to distinguish *Snyder's* by arguing that DMS and Clouse had no written agreement, and that the implied agreement did not rise "to the level of creating a contractual relationship regarding the harm alleged." (doc. 25, p. 16). We are not persuaded by this distinction. The policy excludes coverage for "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." (doc. 16, pp. 2-3). DMS and Clouse are alleged to have had an "implied agreement" in which Clouse's duties were to pick up DMS's uncontaminated milk and deliver it to dairy plants. *See* Original Complaint, ¶ 127. DMS's implied breach of contract claim alleged a breach of the duties arising from this agreement. Accordingly, it is excluded from coverage pursuant to the language of the policy.

Similarly, by contaminating the DMS milk during its delivery to LOL, the negligence claim concerns a breach in the performance of one of Clouse's duties in the implied agreement. Inasmuch as this duty arose from an agreement between DMS and Clouse concerning the carriage and delivery of milk, it sounds in breach of contract and is also excluded from coverage. Thus, St. Paul had no duty to defend based on DMS's causes of action in the original action.

14

St. Paul also argues that other exclusions in the insurance policy support its decision not to defend Clouse, but based on our conclusions, we need not consider these arguments.

*C.  Centennials Motion for Judgment on the Pleadings*

Centennial sets forth four arguments in support of its motion, namely: 1) The policy did not cover the loss since LOL's milk was not in transit on Clouse's vehicle; 2) The policy excludes coverage for property damage caused by dishonest acts or "any willful act intended to cause a 'loss';" 3) The policy was excess coverage only; and 4) It had no duty to defend. (Def.' Br. in Supp. J. On the Pleadings at 5-6). Here, the relevant policy is Centennial's Cargo Carrier Liability.

Under Pennsylvania law, "a court must ascertain the intent of the parties as manifested by the language of the written agreement" when interpreting an insurance policy. *Harleysville Ins. Companies v. AETNA Casualty and Surety Ins. Co.*, 795 A.2d 383, 386 (Pa. 2002)(citations omitted). "When the policy language is clear and unambiguous, the court must give effect to the language of the contract." *Id.*

We agree with Centennial's argument that its policy does not cover LOL's loss. Under the clear and unambiguous terms of Centennial's policy, only "Covered Property...of others in due course of transit under tariff, bill of lading, shipping receipt or contract of carriage issued by [Clouse]" is protected under the policy. (doc. 30, ¶ 16). LOL's milk was at no time in

15

transit on a truck operated by Clouse. LOL's milk was located in a silo at their facility. The condemned milk was transported to the facility by Clouse and pumped into LOL's silo. Only at that time did LOL's milk become contaminated.

We also agree that Centennial's policy precludes coverage. Clouse's actions were dishonest, or willful acts intended to cause a loss. The policy excludes from coverage loss caused by "dishonest or criminal" acts, and "[a]ny willful act intended to cause a 'loss' committed by you or anyone else at your direction." *Id.* Our previous discussion concerning St. Paul's policy is applicable here. Since the allegations of the original complaint sound in intentional or dishonest conduct by Clouse, Centennial had no duty to defend.[2]

We also find that Centennial did not have a duty to defend based on the language of its policy. Centennial argues its policy only provides it the right to defend, but not the duty to defend. The policy grants Centennial "the right to...provide a defense for legal proceedings...." *Id.* There is no duty to defend where the policy does not impose one. *See King Aluminum Corp. v. Hyndman III Ins. Agency, Inc.,* 370 F.Supp. 621 (E.D. Pa. 1974); *Widener University v. Fred S. James & Co., Inc.,* 537 A.2d 829 (Pa. Super. 1988). The clear and unambiguous language of the

---

[2] Based on the rationale discussed *supra*, Centennial also had no duty to defend based on the vicarious liability claim that was linked to the negligent misrepresentation claim.

policy dictates Centennial had the right, but not the duty, to defend.

Lastly, Centennial argues that its policy was for excess coverage. To resolve a dispute over primary and excess coverage, we must not focus "solely on the nature of the policy," but must look to the "plain meaning of the policy terms." *Harleysville Ins. Companies*, 795 A.2d at 386-87. The Centennial policy provides:

> If you have other insurance covering the same "loss" as the insurance under this Coverage Part, we will pay only the *excess* over what you should have received from the other insurance. We will pay the *excess* whether you can collect on the other insurance or not.

(doc. 30, ¶ 16)(emphasis added). Centennial's policy clearly states it will pay "only the excess" over what a insured should receive from "other insurance." The other insurance in this case was United National's policy, and its settlement was well below its policy limits. Centennial was not obligated to contribute to or indemnify the Plaintiff.

17

*VI.   Conclusion*

      Based on the foregoing discussion, we will grant Defendants' motions for judgment on the pleadings.

                                    /s/William W. Caldwell
                                    William W. Caldwell
                                    United States District Judge

Date: October 17, 2008

```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

UNITED NATIONAL INSURANCE        :
COMPANY,
         Plaintiff           :

         vs.                 :      CIVIL NO. 1:CV-07-2092

                                           :
ST. PAUL REINSURANCE COMPANY,
CENTENNIAL INSURANCE COMPANY,    :
         Defendant

*O R D E R*

AND NOW, this 17th day of October, 2008, upon consideration of Defendants' motions for judgment on the pleadings, filed April 29th, 2008 (doc. 16) and August 27th, 2008 (doc. 30), and pursuant to the accompanying Memorandum, it is ordered and decreed that:

    1. Defendants' Motions for Judgment on the Pleadings, are granted;

    2. St. Paul Reinsurance Company was not required to provide a defense or indemnification to the Named Insured, Clouse Trucking, Inc., pursuant to the terms and conditions of the St. Paul Reinsurance Policy No. SPL50277, in the suit initially filed in the Court of Common Pleas of Cumberland County, Pennsylvania on June 13, 2003 (No. 03-2782);

    3. Centennial Insurance Company was not required to provide a defense or indemnification to the Named Insured, Clouse Trucking, Inc., pursuant to the terms and conditions of the Centennial Insurance Company Policy No. 259018819, in the suit initially filed in the Court of Common Pleas of Cumberland County, Pennsylvania on June 13, 2003 (No. 03-2782);

       4.   The Clerk of Court shall close this file.

                               /s/William W. Caldwell
                               William W. Caldwell
                               United States District Judge